United States District Court
Southern District of Texas

**ENTERED**

December 18, 2020

David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS GONZALEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-2527 |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY and HP, INC., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court in this workplace discrimination case is Hewlett Packard Enterprise Company and HP, Inc.'s ("Defendants'") Motion for Summary Judgment [Doc. # 38] ("Motion"). Carlos Gonzalez ("Plaintiff") has responded,[1] and Defendants replied.[2] Plaintiff filed objections to Defendants' Reply,[3] and Defendants responded to Plaintiff's objections and moved to strike them.[4] The Motion is ripe for consideration. Based on the parties' briefing, pertinent matters of

---

[1] Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 46] ("Response").

[2] Defendants Hewlett Packard Enterprise Company and HP Inc.'s Reply Brief in Support of Their Motion for Summary Judgment [Doc. # 48] ("Reply").

[3] Plaintiff's Objections to Defendants' Reply Brief in Support of Response to Defendants' Motion for Summary Judgment [Doc. # 49] ("Plaintiff's Objections").

[4] Defendants' Response to Plaintiff's Objections to Defendants' Reply Brief in Support of Their Motion for Summary Judgment [Doc. # 50] ("Motion to Strike").

record, and relevant legal authorities, the Court **grants in part and denies in part**
Defendants' Motion.

## I.   BACKGROUND

Plaintiff is a U.S. citizen of Venezuelan national origin.[5]  Plaintiff received a
Bachelor of Science degree in Computer Sciences, a Master of Science degree in
Computer Science, and a Master of Business Administration in International
Business from Saint Joseph's University in Philadelphia, Pennsylvania.[6]

Plaintiff began working for Hewlett Packard Company ("HP") on June 17,
2013 as a Senior .NET Developer and later as an IT Developer/Engineer III.[7]
Plaintiff worked in the ITHR Custom Solutions group of the Human Resource
Information Technology department, which was responsible for designing,
maintaining, and troubleshooting HP's human resource software systems.[8]  Plaintiff
worked on a team of approximately 20 people managed by Vidya Sakthi, who
reported to Imran Dilawar.[9]  Messrs. Sakthi and Dilawar are of Pakistani national

---

[5]    Plaintiff's First Amended Petition [Doc. # 1-6] ("Am. Complaint") at 2; Deposition
of Carlos Gonzalez [Doc. # 38-1] ("Gonzalez Dep.") at 48:20-22.

[6]    Resume of Carlos Gonzalez [Doc. # 46-12].

[7]    May 22, 2013 Offer Letter to Carlos Gonzalez [Doc. # 39-11]; Deposition of Carlos
Gonzalez [Doc. # 38-1] ("Gonzalez Dep.") at 29:13-23.

[8]    Declaration of Vidya Sakthi [Doc. # 39-1] ("Sakthi Decl.") ¶ 2.

[9]    Sakthi Decl. ¶ 2; Declaration of Imran Dilawar [Doc. # 39-2] ("Dilawar Decl.") ¶ 2.

2

origin.  Plaintiff states that most members of the ITHR Custom Solutions group were of Pakistani or Indian national origin.[10]

Plaintiff's 2014 performance review noted that he "initially struggled," but he otherwise received largely positive reviews from his supervisors.[11]  In 2014, Plaintiff took on the role of "scrum master," a non-supervisory software engineer who manages the flow of information on a software development team.[12]  Plaintiff was the only scrum master in the ITHR Custom Solutions group, and no other employee in the group had similar responsibilities.[13]  In addition to his duties as scrum master, Plaintiff was also responsible for interfacing between software engineers and end users to troubleshoot three specific programs.[14]

During 2015 and 2016, three employees within the Human Resources Information Technology group were promoted to supervisory positions.[15]  Aradhya Channabasava was promoted to Manager—Information Technology I, Ilidio

---

[10]     Gonzalez Dep. at 120:18-12, 121:16-17, 215:18-25.

[11]     FY14 Mid-Year Performance and Career Conversation [Doc. # 39-12]; FY14 Year-End Performance Review [Doc. # 39-13]; FY15 Accelerated Performance Review [Doc. # 39-14].

[12]     Sakthi Decl. ¶ 3; Gonzalez Dep. at 42:6-11.

[13]     Gonzalez Dep. 86:24–87:3.

[14]     Sakthi Decl. ¶ 3.

[15]     Dilawar Decl. ¶ 3.

3

Pacheco was promoted to Project Manager V—Internal, and Vidya Sakthi was promoted to Manager—Information Technology I.[16]  Plaintiff verbally expressed interest in a supervisory position, but did not apply for these positions.[17]  Plaintiff claims that Mr. Dilawar told him that he was not qualified to be promoted to a supervisory position because he was one seniority level too low—Plaintiff was a level three individual contributor, while everyone who was promoted was either a level four contributor or a supervisor.[18]

On September 14, 2015, HP announced that it was looking to make "48 new hires to scale [the Human Resource Information Technology team]," and that "[a] large majority of [the] new hires will be college graduates or early career individuals."[19]  HP planned to hire the 48 new employees by July 1, 2016.[20]  HP encouraged its employees to recommend friends or family members for hire.[21]  On October 14, 2015, Mr. Dilawar confirmed that he expected 12 new hires in the

---

[16]     *Id.*

[17]     Gonzalez Dep. at 169:10-19, 204:13–205:8; September 21, 2015 Email from Damian Lloyd to Cyrille Charpin *et al.* [Doc. # 39-3].

[18]     Gonzalez Dep. 186:18-23, 205:2-25; Dilawar Decl. ¶ 3.

[19]     September 14, 2015 Email from Joe Schulz [Doc. # 46-6].

[20]     PowerPoint Presentation: HR & Payroll IT Company Mapping and Current Plans [Doc. # 47-13].

[21]     September 14, 2015 Email from Joe Schulz [Doc. # 46-6].

4

groups he oversaw.[22]  HP managers were initially "not happy with the pace of the hiring," and encouraged Mr. Dilawar and others to "fill up all of the interview slots" and hire at a quicker pace.[23]

On November 1, 2015, Hewlett Packard Company separated into two separate, publicly-traded companies, Hewlett Packard Enterprise Company ("HPE") and HP, Inc. ("HPI").[24]  ITHR Custom Solutions joined HPE, but was scheduled to transition to HPI in June 2016.[25]  Plaintiff was initially slated to transition to HPI and continue to serve as scrum master.[26]

However, in early 2016, the management team overseeing the transition determined that some positions would need to be eliminated to reduce expenses.[27] Mr. Dilawar's supervisor, Cyrille Charpin instructed Mr. Dilawar to eliminate two positions under his supervision, one in ITHR Custom Solutions and one in a different group.[28]  Mr. Charpin did not tell Mr. Dilawar which positions to eliminate, but

---

[22]    December 10, 2015 Email from Imran Dilawar to Jamie Kuch *et al.* [Doc. # 47-11].

[23]    December 7, 2015 Email from Drew Scheer to Natalie Wilson *et al.* [Doc. # 46-7].

[24]    Sakthi Decl. ¶ 4; Dilawar Decl. ¶ 7.

[25]    *Id.*

[26]    Dilawar Decl. ¶ 8; Sakthi Decl. ¶ 5.

[27]    *Id.*; Gonzalez Dep. at 189:3-183

[28]    Dilawar Decl. ¶ 8.

instructed Mr. Dilawar to confer with Mr. Sakthi to choose the position to be eliminated in ITHR Custom Solutions.[29]

Messrs. Dilawar and Sakthi decided to terminate the employee whose job functions they thought would be easiest to redistribute with minimal impact on group performance.[30]   Both men gave input, but Mr. Sakthi made the final decision.[31] Messrs. Dilawar and Sakthi state they selected Plaintiff's position for elimination because the applications Plaintiff supported were simpler and required less time than most of the team's other applications and because the scrum master role was not essential, not technically complex, and other employees in ITHR Customer Solutions had trained for and could perform that function.[32]

In January 2016, Ajmaal Ali, a 28 year old of Pakistani national origin, was hired into the ITHR Customer Solutions group.[33]   Mr. Ali held an MBA and had previously worked for Methodist Hospital in Houston, but had no experience in the IT field prior to being hired by HPE.[34]   Mr. Sakthi instructed Plaintiff to train Mr. Ali

---

[29]   *Id.*; Sakthi Decl. ¶ 5.

[30]   *Id.*

[31]   Dilawar Decl. ¶ 9; Sakthi Decl. ¶ 6.

[32]   Dilawar Decl. ¶ 10; Sakthi Decl. ¶ 7.

[33]   Deposition of Ajmaal Ali [Doc. # 46-3] ("Ali Dep.") at 7:24-8:10.

[34]   *Id.* at 9:19-25, 11:11-16, 15:24-16:3, 23:7-24:1.

as scrum master and to transition Plaintiff's work to Mr. Ali.[35]  Plaintiff claims that despite receiving training, Mr. Ali was unable to perform the scrum master role due to his lack of interpersonal skills and software development experience.[36]

On January 25, 2016, Mr. Dilawar reported that he planned to hire five more new employees into the groups he supervised by July 1, 2016.[37]  Between January and June 2016, Defendants hired 26 new employees for the Human Resource Information Technology team.[38]  All of these new employees were college students or recent college graduates.[39]

On May 20, 2016, Mr. Dilawar informed Plaintiff that his position was being eliminated due to budget cuts.[40]  Mr. Dilawar told Plaintiff that HPE would give him time to find another position within the company, and Plaintiff applied to approximately 60 internal job postings.[41]   However, during this time, HPE

---

[35]     Gonzalez Dep. at 42:17-43:11, 45:22-47:4; Declaration of Carlos Gonzalez [Doc. # 46-13] ("Gonzalez Decl.") ¶¶ 9.15-9.18.

[36]     Gonzalez Decl. ¶ 9.16.

[37]     PowerPoint Presentation: HPI HR IT Solutions Team Structure & People [Doc. # 47-5].

[38]     New Employee Announcements [Doc. # 46-8].

[39]     Id.  Some of these new hires were considered interns.  It is unclear from the summary judgment evidence whether the new interns were paid.

[40]     Dilawar Decl. ¶ 11.

[41]     Id.; Sakthi Decl. ¶ 8; Gonzalez Dep. at 198:15-23.

7

implemented a hiring freeze preventing supervisors from filling many positions, and the positions to which Plaintiff applied within HPE were not filled.[42]

Plaintiff's last day at HPE was June 24, 2016.[43]  Plaintiff was 53 years old.[44] Two other members of the Human Resources Information Technology group were also terminated around this time, a 57 year old in the Houston office and a 53 year old in the Singapore office.[45]  These three employees were the oldest members of their respective teams.[46]  On Plaintiff's last day, the ITHR Custom Solutions group celebrated their upcoming transition to HPI with dinner and drinks at an upscale restaurant in downtown Houston.[47]

The ITHR Custom Solutions group continued to make new hires around the time Plaintiff was terminated.   On June 7, 2016, Mr. Sakthi announced that Venkatesh Tata would join the group on July 6, 2016 working out of Bangalore,

---

[42]     Gonzalez Dep. at 198:24–199:24.

[43]     Dilawar Decl. ¶ 11.

[44]     Gonzalez Dep. at 52:2-4.

[45]     Gonzalez Dep. at 97:7-15, 159:24-160:6.

[46]     *Id.*

[47]     *Id.* at 115:4-22.

India.[48]  Mr. Tata filled the position of IT Developer/Engineer III, the same position Plaintiff held before his termination.[49]

On July 1, 2016, the ITHR Custom Solutions group joined HPI.[50]  Plaintiff was at all times relevant to this lawsuit an employee of Hewlett Packard Company and then HPE, and was never employed by HPI.[51]

After Plaintiff's employment was terminated, his job functions were redistributed among the ITHR Custom Solutions Group.[52]  Plaintiff's scrum master duties were given to Azam Samy, an IT Developer/Engineer of Indian descent whom Plaintiff had trained in the role before his departure.[53]  Plaintiff originally trained Mr. Ali to assume the role of scrum master, but it was ultimately assigned to Mr. Samy because Mr. Ali allegedly could not effectively perform that role.[54]

---

[48]     June 7, 2016 Email from Vidya Sakthi [Doc. # 46-5].

[49]     May 17, 2016 Email from Vidya Sakthi to HRIT Custom Solutions group [Doc. # 47-8]; May 23, 2016 Email from Imran Dilawar to Katherine Fricks *et al.* [Doc. # 47-7].

[50]     Sakthi Decl. ¶ 9.

[51]     *Id.*

[52]     Sakthi Decl. ¶ 10.

[53]     *Id.*

[54]     Gonzalez Decl. ¶¶ 9.16-9.20.

9

Plaintiff's other job duties were distributed among other members of the ITHR Custom Solutions group.[55]

After being terminated, Plaintiff applied to other jobs, including one with a contractor who intended to staff him on projects with HPE.[56]  Plaintiff claims that HPE told the contractor that he was not eligible to work with HPE.[57]  Plaintiff states the contractor was told he was ineligible to work with HPE, but acknowledges this was because Plaintiff had accepted a severance payment, the terms of which prevented Plaintiff from working with HPE for one year.[58]

Plaintiff filed suit against HPE and HPI on April 7, 2018 in the 157th Judicial District Court of Harris County, Texas, claiming that Defendants treated him less favorably than similarly situated employees because of his age and national origin in violation of the Texas Commission on Human Rights Act ("TCHRA").[59] Defendants answered on May 18, 2018.[60]  Plaintiff filed a first amended complaint

---

[55]    Sakthi Decl. ¶ 10; Gonzalez Dep. at 45:22-47:4.

[56]    Gonzalez Dep. at 206:5-14.

[57]    *Id.* at 207:16-208:8

[58]    *Id.* at 16:5-17:10, 207:23-208:8, 219:22-221:7.

[59]    *See* Plaintiff's Original Petition [Doc. # 1-4] at 5.

[60]    Defendants' Original Answer, Special Exceptions, Affirmative Defenses, and Prayer for Relief [Doc. # 1-5].

on June 23, 2018, asserting the same claims.[61]   On July 20, 2018, Defendants removed the case to this Court.[62]   On April 20, 2020, Defendants moved for summary judgment, arguing that Plaintiff cannot show as a matter of law that he was treated differently than similarly situated employees.[63]

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to their case and on which they will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

---

[61]     Plaintiff's First Amended Petition [Doc. # 1-6].

[62]     *See* Notice of Removal [Doc. # 1].

[63]     *See* Defendants' Motion.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves*

*Brokerage Co.*, 336 F.3d at 412-13).  The Court is not required, however, to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.  In addition, a party may not create a genuine issue of material fact "using an affidavit that impeaches, without explanation, sworn testimony."  *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)).  However, if an affidavit "'merely supplements rather than contradicts prior deposition testimony,' it may be considered when resolving the motion for summary judgment."  *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (quoting *S.W.S.*, 72 F.3d at 496).

## III.  <u>DISCUSSION</u>

Defendants move for summary judgment on Plaintiff's claims of age and national origin discrimination.  Defendants have also moved to strike Plaintiff's Objections to Defendants' Reply as an improper sur-reply.

### A.  <u>Motion to Strike Plaintiff's "Objections"</u>

The Court first considers Defendants' Motion to Strike Plaintiff's Objections to Defendants' Reply.  Plaintiff filed what he referred to as his "Objections to Defendants' Reply Brief" ("Plaintiff's Objections") one day after Defendants filed

their reply in support of their Motion.[64]  Defendants argue that Plaintiff's Objections

are an improper sur-reply and move the Court to strike the document from the record.

Federal Rule of Civil Procedure 56(c)(2) allows parties arguing a motion for

summary judgment to "object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence."  Where a

movant cites new cases or makes new arguments in their reply, courts may grant the

non-movant leave to file a sur-reply.  *See RedHawk Holdings Corp. v. Schreiber*

*Trustee of Schreiber Living Trust DTD 2/8/95*, --- F. App'x ----, 2020 WL 6683017,

at *2 (5th Cir. 2020).  The local rules do not permit parties to file sur-replies without

leave of court.  *See* S.D. TEX. LOC. R. 7.  Sur-replies are "heavily disfavored" in the

Fifth Circuit, *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751

n.2 (5th Cir. 2014) (*per curiam*) (citing *Weems v. Hodnett*, No. 10–CV–1452, 2011

WL 2731263, at *1 (W.D. La. July 13, 2011)), and "[t]he mere fact that the movant

cites new cases and makes new 'arguments' [in their reply] is not alone sufficient"

to justify leave to file a sur-reply.  *Jefferson v. Hosp. Partners of Am., Inc.*,

No. CIV.A. H-08-1535, 2009 WL 8758090, at *6 (S.D. Tex. May 18, 2009), *aff'd*

*sub nom. Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010).

---

[64]    Plaintiff's Objections to Defendants' Reply Brief in Support of Response to
Defendants' Motion for Summary Judgment [Doc. # 49].

Plaintiff's Objections rehash many of the points in Plaintiff's Response, and do not raise actual objections to the evidence in Defendants' Motion or Reply. Accordingly, Plaintiff's Objections are properly characterized as a sur-reply. Because Defendants' Reply did not raise arguments or reference evidence not included in Defendants' Motion,[65] the Court concludes that Plaintiff's Objections are a sur-reply made without leave and was neither necessary nor warranted. Accordingly, Plaintiff's Objections will be struck.  The Court does not consider Plaintiff's Objections in ruling on Defendants' Motion.

## B.    **Plaintiff's Claims Against HPI**

Defendants argue that Plaintiff lacks standing to sue HPI because Plaintiff was never employed by HPI and HPI played no role in Plaintiff's termination.[66]  Plaintiff admits in his Response that HPI "was not [Plaintiff's] employer at the time he was

---

[65]    Plaintiff argues that "[Defendants] ha[ve] raised 'business necessity' for the first time in [their] Reply Brief," Objection at 1, but Defendants' Motion is replete with argument that Plaintiff was laid off as part of a necessary workforce reduction. *See* Motion at 5-6, 15-16, 18-19.  In fact, Plaintiff made essentially the same argument regarding the business necessity of his termination in his Response as in his Objection.  *Compare* Plaintiff's Response at 20 ("here, there was no lay-off.  The alleged [reduction in force] only involved the oldest two employees reporting to Dilawar. . . .  Evidence of pretext also consists of the absence of any factual, objective criteria for selecting [Plaintiff] for termination.") *with* Plaintiff's Objection at 2 ("[Plaintiff] is not challenging the wisdom of HPE's business decisions but the sincerity or credibility of HPE using this argument as its stated motivation in selecting [Plaintiff] for termination.  This 'business decision' is not even supported by the evidence.").

[66]    Motion at 10.

terminated" and states that he does not oppose Defendants' argument that his claims against HPI should be dismissed.[67]  The Court concludes there is no genuine dispute that HPI was never Plaintiff's employer and was not involved in Plaintiff's termination from HPE.  Accordingly, Plaintiff does not have standing to sue HPI and Plaintiff's claims against HPI will be dismissed.

### C.    <u>Plaintiff's Claims Against HPE</u>

Defendants argue that summary judgment is appropriate on Plaintiff's claims against HPE because Plaintiff cannot show as a matter of law that he was fired because of his age or national origin.  Defendants contend that this case involves a reduction in force, and that Plaintiff cannot make a *prima facie* showing of discrimination under the test applicable in reduction in force cases.  In response, Plaintiff argues that this case involves a replacement, rather than a reduction in force. He asserts that genuine questions of material fact preclude summary judgment under either the replacement or reduction in force tests.

### 1.    Whether This Case Involves a Reduction in Force

To establish a *prima facie* case of discrimination in cases where an employee was replaced, "a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged; and

---

[67]      Response at 3.

(4) after being discharged, her employer replaced her with a person who is not a member of the protected class." *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (stating *prima facie* case elements in context of Title VII case).[68] However, "[i]n cases where the employer discharges the plaintiff and does not plan to replace her, [the Fifth Circuit] ha[s] held that the fourth element is, 'more appropriately, that after [the] discharge others who were not members of the protected class remained in similar positions.'" *Id.* (quoting *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990)); *accord Lay v. Singing River Health Sys.*, 694 F. App'x 248, 253-54 (5th Cir. 2017) (stating fourth element of *prima facie* case in reduction in force cases is "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.") (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

Because the fourth requirements for a *prima facie* case of discrimination is different in reduction in force cases from that element in replacement cases, the

---

[68]  Plaintiff's claims arise solely under the TCHRA.  The purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."  TEX. LAB. CODE ANN. § 21.001.  "Accordingly, the Supreme Court of Texas has 'consistently held that the analogous federal statutes and the cases interpreting Title VII guide its reading of the TCHRA.'"  *Satterwhite v. City of Houston*, 602 F. App'x 585, 589 (5th Cir. 2015) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)).

Court considers the threshold question of whether this case involves a replacement or a reduction in force. *Harper v. Fort Bend Ind. Schl. Dist.*, No. H–16–1678, 2017 WL 1881971, at *6 (S.D. Tex. May 9, 2017) ("the threshold issue is whether the facts make a reduction-in-force or a replacement analysis appropriate."); *McCreless v. Moore Bus. Forms*, No. H-94-3594, 1996 WL 243378, at *16 (S.D. Tex. May 2, 1996) ("In order to decide which prima facie test is applicable, it must first be determined whether the instant case is a replacement case or a reduction-in-force case.").

Defendant argues that this case should be analyzed under a reduction in force framework because Plaintiff's termination was part of a company-wide effort to reduce expenses and meet budgetary goals. Defendant claims that Plaintiff was not replaced because his job duties were redistributed among existing employees. Plaintiff counters that this case does not involve a reduction in force because HPE hired dozens of new employees in the months preceding Plaintiff's termination. Plaintiff claims he was functionally replaced because his primary job duty as scrum master was assumed by one employee.

Courts evaluating whether a termination was a replacement or part of a reduction in force primarily consider whether all of the terminated employee's job

duties were assumed by another employee, or whether those job duties were reassigned among several employees or made obsolete.[69]

The summary judgment evidence in the case at bar shows that Plaintiff's position was eliminated and his duties were reassigned to other employees.[70] Plaintiff claims he was replaced by Mr. Ali, but admits in his own declaration that Mr. Ali did not assume his duty as scrum master, let alone other of Plaintiff's duties, as is required to show that a replacement occurred.[71] The Court concludes that this case is properly analyzed under the reduction in force framework.

---

[69] *See Meinecke*, 66 F.3d at 84 (finding reduction in force framework was appropriate where employer terminated eight employees and closed the office where plaintiff worked as part of a reorganization plan and other employees assumed plaintiff's job duties); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149-50 (5th Cir. 1995) (finding a reduction in force where plaintiff's position and five others were eliminated and their duties divided among remaining employees and outside vendors); *Adams v. Memorial Hermann*, No. 4:15-CV-01270, 2018 WL 5886800, at *5 (S.D. Tex. Nov. 9, 2018) (finding facts that defendant "permanently closed the clinic for legitimate business reasons" and "terminated all [seven] clinic employees . . . show that [defendant] carried out a reduction in force."); *Kern v. GE Capital Inf. Tech. Sols.*, No. 3:01CV2109-P, 2003 WL 22433817, at *4 n.2 (N.D. Tex. Feb. 19, 2003) ("the Court finds that this was a reduction in force case because [plaintiff's] position was terminated and no one was hired to replace [plaintiff]."); *McCreless*, 1996 WL 243378, at *6 ("it must first be determined whether the instant case is a replacement  case or a reduction-in-force case.  The facts must be examined to establish whether [plaintiff]was replaced or whether he was demoted or discharged with no actual replacement as part of a general reduction in the company's workforce.").

[70] Sakthi Decl. ¶ 10; Gonzalez Dep. at 45:22-47:4.

[71] *See* Plaintiff's Response at 5 (stating that Plaintiff "was replaced by Ajmaal Ali."); Gonzalez Decl. ¶ 9.19 ("Ali was unable to run the scrum master job . . .").

### 2. Whether Plaintiff has Made a *Prima Facie* Case of Discrimination

Where, as here, a plaintiff presents only circumstantial evidence of discrimination, the *McDonnell Douglas* burden shifting framework applies. "The *McDonnell Douglas* framework first requires a plaintiff to establish a *prima facie* case of age discrimination." *Salazar v. Lubbock Cnty. Hosp.*, --- F.3d ---, 2020 WL 7138646, at \*2 (5th Cir. 2020) (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010)). "In a reduction-in-force case, a plaintiff makes out a *prima facie* case by showing (1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Nichols*, 81 F.3d at 41 (quoting *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991)). "A plaintiff who establishes a prima facie case of age discrimination 'raises an inference of unlawful discrimination.'" *Lay*, 694 F. App'x at 253 (quoting *Nichols*, 81 F.3d at 41).

The parties do not dispute that Plaintiff has satisfied the first three elements of a *prima facie* case of age or national origin discrimination. Plaintiff is of Venezuelan (*i.e.* Latino) national origin and was over the age of 40 at the time of his

termination, and was therefore a member of two protected groups.[72]  The parties also agree that Plaintiff's termination was an adverse employment action, and that Plaintiff was qualified to assume another position at the time of discharge.[73]

Defendants argue that Plaintiff cannot establish the final element of a *prima facie* case of age or national origin discrimination, that Defendants discriminated against Plaintiff in deciding to terminate him.  Plaintiff counters that he has introduced evidence raising genuine questions of material fact as to whether HPE terminated his employment because of both his age and national origin.

### a.    Plaintiff's Age Discrimination Claim

Defendants argues that Plaintiff lacks any evidence that he was treated less favorably than younger, similarly situated employees.  Plaintiff counters that evidence showing that Defendants hired dozens of young employees at the same time they laid off three of their oldest workers could lead a reasonable jury to find that Plaintiff was selected for termination due to his age.

---

[72]    Gonzalez Dep. at 48:20-22, 52:2-4.

[73]    *See* Motion at 13.  Plaintiff has also alleged he was denied travel and training opportunities, received negative performance evaluations, was not selected for promotion, and was not re-hired as a contractor by HP despite being qualified.  *See* Am. Complaint at 3-4.  Plaintiff's Response to Defendants' Motion makes clear that Plaintiff offers these allegations as evidence of discrimination, and not as adverse employment actions in addition to his termination.  *See* Plaintiff's Response at 4.

The Court concludes that Defendants have not shown beyond genuine dispute of material fact that Plaintiff has not made out a *prima facie* case of age discrimination.  Drawing all reasonable inferences in favor of Plaintiff, as required on summary judgment, Defendants' hiring of many new, young, and/or less experienced workers close in time to Defendants' firing of Plaintiff and two other older workers raises genuine questions of material fact regarding whether Plaintiff was targeted for workforce reduction due to his age.[74]  Defendants have not shown as a matter of law that Plaintiff cannot make out a *prima facie* case of age discrimination.

### b.      Plaintiff's National Origin Discrimination Claim

Defendants claim that Plaintiff has not proffered evidence from which a factfinder might conclude that Defendants discriminated against Plaintiff on the basis of his national origin, Venezuelan or Latino.  Plaintiff responds that he has introduced evidence that Messrs. Sakthi and Dilawar favored employees of Indian and Pakistani national origin and that Mr. Dilawar was biased against Latinos.

To support the fourth element of the *prima facie* case, that is, evidence suggesting his supervisors' intent to discriminate on the basis of national origin,

---

[74]    Plaintiff asserts Defendants terminated the oldest workers (all in their 50s) in several departments.  Gonzalez Dep. at 97:7-15; *see also* Ali Dep. at 56:19-57:23 (stating that the oldest employee in the ITHR Custom Solutions Group as of November 2019 was approximately 50 years old).  Defendants have not disputed this contention.

Plaintiff has produced no probative evidence.  Plaintiff's testified in his deposition that Messrs. Sakthi and Dilawar exhibited favoritism toward employees of Indian and Pakistani national origin.[75]  These conclusory statements are unsupported by objective or even relevant circumstantial evidence, and are contradicted by other statements in Plaintiff's deposition that Mr. Sakthi treated Indian employees poorly, without mention of his treatment of Latino employees.[76]  Accordingly, Plaintiff's conclusory assertions are insufficient to create a genuine issue of material fact.  *See Salazar*, 2020 WL 7138646, at *2 ("[plaintiff's] self-serving statements . . . are insufficient to create a triable issue of fact . . . ."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for plaintiff when defendant's only evidence in opposition was his own "self-serving allegations"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement" by defendant was insufficient to create a triable issue of fact).

The evidence Plaintiff claims shows Mr. Dilawar was biased against Latinos is limited to statements by Plaintiff that Mr. Dilawar was once rude to the staff at a Mexican restaurant and refused to interview a single Mexican candidate for a job

---

[75]     *See* Gonzalez Dep. at 97:16-98:8, 120:4-121:17.

[76]     *Id.* at 76:6-77:1, 120:4-120:24.

because Mr. Dilawar believed the candidate did not have authorization to work in the United States.[77]  "[C]omments are evidence of discrimination only if they are '1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'"  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000)).  "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Id.*; *Katseanes v. Time Warner Cable, Inc.*, 511 F. App'x 340, 346 (5th Cir. 2013) ("'stray remarks' . . . d[o] not provide a legally sufficient basis for sending the case to the jury.") (citing *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997)).  Plaintiff has failed to show that the comments he claims are proof of Mr. Dilawar's bias against Latinos were proximate in time and related to Plaintiff's termination.   Plaintiff offers no information about when these comments were made or how, if at all, they related to his own termination.  These comments are therefore stray remarks insufficient to defeat summary judgment. Defendants have shown beyond genuine dispute of material fact that Plaintiff cannot

---

[77]     Gonzalez Dep. at 174:2-176:7.

make out a *prima facie* case of national origin discrimination.  Plaintiff's national origin discrimination claim will be dismissed.

### 3. Whether Defendant has Established a Legitimate Non-Discriminatory Reason for Plaintiff's Termination

If a plaintiff makes out a *prima facie* case of discrimination, "[t]he burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action."  *Nichols*, 81 F.3d at 41.  "The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'"  *Id.* (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)).  "If defendant meets that burden, 'the presumption of discrimination created by the plaintiff's *prima facie* case disappears and the plaintiff must meet [their] ultimate burden of persuasion on the issue of intentional discrimination.'"  *Lay*, 694 F. App'x at 253 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

Defendants have presented evidence that Plaintiff was terminated for legitimate, non-discriminatory reasons.  Defendants claim that terminations were necessary due to budget cuts, and that Plaintiff's supervisors chose to eliminate his position because his duties could be most easily reassigned to other employees.  The Court concludes that this evidence is sufficient to satisfy Defendant's burden of production under the *McDonnell Douglas* framework.

26

###### 4.    Whether Defendants' Reasons for Terminating Plaintiff Are a Pretext for Discrimination

"Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination." *Nasti v. CIBA Spec. Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). "To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Id.* A plaintiff can establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

The Court concludes Plaintiff has met his summary judgment burden by showing Defendants' proffered reasons for his termination could be found pretextual because HPE hired *dozens* of young, less experienced workers at the same time or shortly before it fired him and two other employees in their 50s, people Plaintiff states were the oldest in their respective departments. Plaintiff also cites to evidence that the ITHR Custom Solutions group held expensive dinners and cocktail hours—

27

actions arguably inconsistent with a group facing budget problems—around the same time Plaintiff was laid off.

There are genuine issues of material fact that preclude summary judgment. Messrs. Sakthi's and Dilawar's statements that the layoffs were necessary to reduce expenses are inconsistent with Defendants' hiring spree. Defendants' intent in terminating Plaintiff's employment is a question for the jury. Related subsidiary fact questions exist about the complexity of the scrum master role, the difficulty of Plaintiff's other job duties, and whether Plaintiff was easy to replace, as Defendants claim. Accordingly, summary judgment is denied on Plaintiff's age-based discrimination claim against HPE.

## IV.   <u>CONCLUSION</u>

Plaintiff's Objections [Doc. # 49] are an unwarranted sur-reply made without leave of the Court. The Court does not consider Plaintiff's Objection in ruling on Defendants' Motion.

There is no genuine dispute of material fact that Plaintiff was never employed by HPI. Accordingly, Plaintiff's claims against HPI will be dismissed.

Plaintiff has presented sufficient evidence for a *prima facie* case of age discrimination against HPE, but has not done so on his claim of national origin discrimination. HPE has proffered legitimate non-discriminatory reasons for Plaintiff's termination, but genuine questions of material fact exist regarding

whether HPE's proffered reasons were a pretext for discrimination on the basis of Plaintiff's age.  It is therefore

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 21] is **granted** with respect to Plaintiff's claims against HPI and Plaintiff's national origin discrimination claims against HPE.  Those claims are **dismissed**.  Defendants' Motion is otherwise **denied**.

SIGNED at Houston, Texas, this <u>18th</u>day of December, 2020.


_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE